IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

PATRICIA AUSTIN                                                                    PLAINTIFF

VS.                                                       CIVIL ACTION NO. 4:10CV129-WAP-DAS

MICHAEL J. ASTRUE,
Commissioner, United States Social
Security Administration                                                            DEFENDANT

## REPORT AND RECOMMENDATION

This case involves an application pursuant to 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of Social Security ("Commissioner") denying the application of the claimant, Patricia Austin, for a period of disability, disability insurance benefits, and supplemental security income. The parties have not consented to have a magistrate judge conduct all the proceedings in this case; therefore, the undersigned submits this report and recommendation to the United States District Judge.

### I. PROCEDURAL AND FACTUAL HISTORY

On January 17, 2007, the claimant filed applications for supplemental security income and for a period of disability and disability insurance benefits, alleging that she had been disabled since June 19, 2005. Following adverse administrative determinations, the claimant filed a request for a hearing before an administrative law judge ("ALJ"). After a hearing, the ALJ issued an unfavorable decision on May 11, 2009. The Appeals Council denied the claimant's request for review of the ALJ's decision on August 19, 2010. The Commissioner's decision is now ripe for review under section 205(g) of the Social Security Act. *See* 42 U.S.C. § 405(g).

At the time of the hearing, the claimant was 49 years old and had a ninth grade education.

Her past relevant work included semiskilled work as a material handler. The ALJ found the claimant had severe impairments of the shoulder (arthritis) and carpal tunnel syndrome. The ALJ further determined that the claimant did not have an impairment which met or equaled in severity the requirements of any listed impairment. The ALJ found the claimant retained the functional ability to perform light work, with limitations against overhead work and performing jobs requiring high torque or high impact tools. The ALJ heard testimony from a vocational expert ("VE") who testified that the claimant's past work as a material handler was heavy in exertion. Based on this, the ALJ determined the claimant's residual functional capacity ("RFC") prevented performance of her past work. However, based upon additional testimony from the VE, he determined that she could perform other jobs which existed in significant numbers in the national economy, including information clerk, ticket cashier, and room service clerk. Consequently, the ALJ determined that the claimant was not disabled within the meaning of the Social Security Act at anytime through the date of his opinion.

## II. LAW AND STANDARD OF REVIEW

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[1] The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability, and if the claimant is successful in sustaining his burden at each of the first four levels then the burden shifts to the Commissioner at step five.[2] First, the claimant must prove he is not currently engaged in substantial gainful activity.[3] Second,

---

[1] *See* 20 C.F.R. §§ 404.1520 (2010).

[2] *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).

[3] 20 C.F.R. §§ 404.1520(b) (2010).

the claimant must prove his impairment is "severe" in that it "significantly limits his physical or mental ability to do basic work activities . . . ."[4] At step three the ALJ must conclude the claimant is disabled if he proves that his impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.10 (2010).[5] Fourth, the claimant bears the burden of proving he is incapable of meeting the physical and/or mental demands of his past relevant work.[6] If the claimant is successful at all four of the preceding steps, the burden shifts to the Commissioner to prove, considering the claimant's residual functional capacity, age, education and past work experience, that he is capable of performing other work.[7] If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he cannot, in fact, perform that work.[8]

This court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

---

[4] 20 C.F.R. §§ 404.1520(c) (2010).

[5] 20 C.F.R. §§ 404.1520(d) (2010). If a claimant's impairment meets certain criteria, that claimant's impairments are of such severity that they would prevent any person from performing substantial gainful activity. 20 C.F.R. §§ 404.1525 (2010).

[6] 20 C.F.R. §§ 404.1520(e) (2010).

[7] 20 C.F.R §§ 404.1520(f)(1) (2010).

[8] *Muse*, 925 F.2d at 789.

*Perales*, 402 U.S. at 401 (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)). The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not reweigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988), even if it finds that the evidence preponderates against the Commissioner's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell*, 862 F.2d at 475. If the Commissioner's decision is supported by the evidence, then it is conclusive and must be upheld. *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994).

### III. ANALYSIS

The claimant presents three issues for review: 1) whether the Commissioner considered all of the claimant's "vocationally significant impairments;" 2) whether the Commissioner considered the issue of "presumptive disability;" and 3) whether at step five the Commissioner carried his burden of proving that the claimant was capable of performing other work activity. The court will discuss these issues separately.

#### 1. ALJ's RFC Finding

The claimant first contends the ALJ erred because he failed to consider the "vocational

impact" of impairments he found to be severe. Specifically, the claimant argues that the ALJ did not consider any limitations with gross or fine manipulation associated with her carpal tunnel syndrome ("CTS"). Additionally, the claimant argues the Appeals Council failed to properly consider new evidence of her borderline intellectual functioning.

The claimant points out that the VE testified that any limitations with gross or fine manipulation would have "a significant impact" on her ability to perform other work. Ultimately, the claimant contends the ALJ's RFC assessment at step four of the sequential evaluation process is not supported by substantial evidence because it omits limitations associated with her ability to handle and/or grip objects. In support of her argument, the claimant points to electrodiagnostic studies confirming CTS and a listing of common symptoms associated with CTS from the U.S. National Library of Medicine, National Institutes of Health website. The court does not find this argument persuasive.

First, the court agrees with the Commissioner that the list of common symptoms submitted by the claimant are not relevant to this inquiry, especially if she can point to no medical evidence in the record showing she actually experienced them. Next, outside her actual subjective complaints, the claimant points to conduction studies indicating only *mild* CTS and a finding of 2/5 grip strength by Dr. Darrell Blaylock on April 16, 2007. However, it is apparent that the ALJ considered this evidence and essentially determined that other evidence in the record weighed in favor of a finding of no real limitations with regard to the claimant's grip or ability to handle objects.[9]

The ALJ noted that he fully accepted the assessment of Dr. Michael Price. The claimant

---

[9]The ALJ has the sole responsibility of weighing the evidence, and it is not the job of this court to reweigh it. *See Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990) (citations omitted).

saw Dr. Price on June 7, 2007, for a follow-up evaluation of her bilateral wrist and hand pain. Dr. Price reviewed the claimant's nerve conduction studies and noted that he "appreciate[d] the finding of mild bilateral carpel tunnel syndrome and some left ulnar nerve entrapment at the elbow." After examining the claimant, however, he noted she had "no significant" wrist or hand pain; her grip strength was 5/5; she had good thenar muscle tone; her hands were neurovascularly intact bilaterally; and all flexor and extensor tendons were intact in both wrists and hands. Indeed, the claimant had reported that her wrists and hands were "not hurting that much," that she was "feeling better in her hands and wrists recently," and that her "discomfort . . . came and went . . . [and] was dull and non-radiating from the bilateral wrist and hand region . . . . Additionally, the claimant told Dr. Price that she had been having occasional "discomfort" in all of her fingers but not on the day of the exam. Dr. Price recommended that the claimant follow up with a neurologist for her occasional pain radiating down her bilateral arms to the elbows ("but not into the wrists or hands") and that she wear wrist splints if ever her symptoms returned. Based on this, the court finds that substantial medical evidence in the record supports the ALJ's exclusion of limitations associated with fine and gross manipulation and/or handling and gripping from the claimant's RFC.

With regard to the claimant's argument that the ALJ failed to "explain any basis for rejecting [her subjective] statements regarding her limitations with gross and fine manipulation," the court finds it is without merit. The claimant's attorney elicited the majority of her testimony regarding her grip and ability to handle objects. While being examined by her attorney, she agreed that she had "dropped some things because of [her] grip." She also said she wore pants that slip on because she had trouble with buttons. Additionally, she testified that she had to hold everything

with two hands because she was afraid she would drop things and that she had trouble opening things such as "a new jar of mayonnaise." However, the ALJ explicitly noted that while he had considered the claimant's testimony, he found it was not credible in light of the objective medical evidence. At this point in his decision, the ALJ pointed to the medical findings of both Drs. Blaylock and Price noted above.[10] Credibility determinations are generally entitled to great deference. *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000). And, in this case, the court finds that substantial evidence in the record supports the ALJ's credibility determination.

Next, the court turns to the claimant's argument that the Appeals Council failed to properly consider her IQ scores. The claimant submits that though not available at the time of the hearing, evidence of IQ scores "within the range of mental retardation or, at best, borderline intellectual functioning" was submitted to the Appeals Council and is part of the record before this court. The claimant contends that the Appeals Council should have assumed review and remanded her case to the ALJ for consideration of the impact of her limited intelligence on her ability to perform the other jobs proffered by the VE.

The Appeals Council need not consider additional evidence unless it is new, material,[11] and relates to the relevant time frame. 20 C.F.R. § 404.970(b). If these three conditions are met, the Council must grant review of the case if after consideration of all the evidence now in the record, the ALJ's decision is contrary to the weight of the evidence. *Id.* Here, the Notice of Appeals

---

[10]While the ALJ must consider the claimants subjective complaints, he does have to accept the claimant's allegations regarding the severity of her condition or the intensity of her pain. *See Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991).

[11]Evidence is "new" if it is not duplicative or cumulative, and is material "if there is a reasonable possibility that the new evidence would have changed the outcome." *Wilkins v. Secretary*, 953 F.2d 93, 96 (4th Cir. 1991).

7

Council Action indicates that the Council reviewed the additional briefing and school records submitted by the claimant's attorney but "found no reason under [its] rules to review" the ALJ's decision. In her brief before the Appeals Council, the claimant argued that the ALJ "erred in failing to properly consider Listing 12.05C." Additionally, the claimant submitted two pages of records from three of her elementary schools located in Greenville, Mississippi. The claimant argued to the Appeals Council that she "was tested on the Otis-Lennon IQ test and obtained scores of 67, 69, and 74" and that she met the first prong of Listing 12.05C because of her valid test scores."

The Social Security Administration measures the extent of a claimant's mental retardation by means of intelligence tests. Regardless of the type of test used, IQ scores must be valid in order to be considered by the Commissioner. *Clay v. Barnhart*, 417 F.3d 922, 929 (8th Cir. 2005). Social security regulations specify that the "narrative report that accompanies the test results should comment on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitation." 20 C.F.R. Part 404, Subpart P Appx 1 § 12.00D(6)(a). Further, it is indicated that IQ scores in Listing 12.05 apply to scores in the Wechsler series (Wechsler Adult Intelligence Scale or "WAIS"). *Id*. at (6)(c). Scores from other tests are acceptable, but the numerical values obtained must indicate a similar degree of intellectual functioning. *Id*. Moreover, if the claimant has IQ scores on tests other than the WAIS, the scores must be converted into the corresponding percentile rank in the general population. *Id*. The court has reviewed the school records the claimant submitted to the Appeals Council, and those records actually indicate scores on three separate "Mental Ability or Intelligence Tests" administered to the claimant during the course of her attendance of elementary school, including

the PMA/SRA (IQ-67); Otis-Lennon (IQ-69); and R.A. (IQ-74). The information related to these scores merely includes the name of the test administered, the age of the claimant, and the date. These bare scores do not meet the requirements of acceptable evidence of intelligence testing under the regulations. *Cf. Miles v. Barnhart*, 374 F.3d 694, 699-700 (8th Cir. 2004) (finding ALJ was justified in rejecting claimant's lowest high school IQ score where multiple tests had been given over a number of years and there were no narratives explaining the scores). Accordingly, the claimant has failed to convince the court that she had valid and acceptable IQ scores and that there was a reasonable possibility that this evidence would have changed the outcome of the Commissioner's decision. *Cf. Jones v. Astrue*, No. 06-30735, 2007 WL 1017095, at *3-4 (5th Cir. March 29, 2007) (upholding district court's decision not to remand case where Appeals Council denied claimant's request for review without explaining the weight that it gave to claimant's new evidence and new evidence did not contradict earlier evidence). Ultimately, the claimant has failed to show that the Council was required to grant review of the ALJ's decision.

## 2. Presumptive Disability

Next, the claimant contends the Commissioner failed to properly evaluate whether her condition met the requirements of Listing 12.05C. As noted above, the claimant raised this issue for the first time before the Appeals Council. "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." *Sullivan v. Zebley,* 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). The criteria in the Listings are "demanding and stringent." *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994).

Listing 12.05, Mental Retardation, states:

Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the

> developmental period; *i.e.,* the evidence demonstrates or supports onset of the impairment before age 22.

20 C.F.R., pt. 404, subpt. P, App. 1, § 12.05 (2010). This is what is commonly referred to as the "capsule definition" for this listing. *Lax v. Astrue*, 489 F.3d 1080, 1085 (10th Cir. 2007). In addition to meeting this capsule definition, a claimant must also meet one of the four severity prongs for mental retardation as listed in the regulations. *Id.* The Listing states that "[t]he required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied." *See* 20 C.F.R., pt. 404, subpt. P, App. 1, § 12.05 (2010). For our purposes here, we need only examine prong C which requires "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." To qualify for a disability finding under Listing 12.05(C), a claimant must meet both the diagnostic requirements contained in the introductory paragraph ("significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested" before the age of 22) and the severity criteria contained in paragraph C (an IQ of 60 to 70 and a physical or other mental impairment). *See Randall v. Astrue*, 570 F.3d 651, 655-60 (5th Cir. 2009).

In this case, the claimant has failed to point to evidence in the record that suggests she met all of the requirements of Listing 12.05C. The court need not make a determination of whether the claimant met the diagnostic criteria of 12.05C because it has already been determined that the claimant has failed to show that she had the *valid* IQ scores required under paragraph C. Accordingly, this issue is without merit.

### 3. Other Jobs

Here, the claimant contends that the Commissioner failed to meet his burden at step 5 of

establishing the existence of other work that she could perform. Specifically, the claimant argues that there is no evidence that she has the intellectual ability to perform the language requirements of the jobs proffered by the VE and relied upon by the ALJ. Additionally, the claimant contends the ALJ did not pose any limitations with regard to reaching, handling, or use of the shoulders to the vocational expert with the exception of a limitation of overhead reaching.

    The ALJ gave the VE the following hypothetical:

> Assume an individual who is 49 years old, therefore, a younger-age [sic] individual. Individual has ninth [sic] grade education and the same past work you just described. Assume that the individual could lift and carry 20 pounds occasionally, 10 pounds frequently, stand and walk six of eight hours in a day, sit six of eight hours in a day [sic]. Assume that there are no other exertional limitations. However, assume this individual should . . . never climb ladders, ropes and scaffolds. Further assume that this individual should only, cannot do [sic] any overhead work with either upper extremity. Also, the individual should not perform jobs requiring high torque or high impact tools.

The VE testified that while an individual with this RFC could not perform the claimant's past work, the individual could perform the job of "information clerk" (DOT 237.367-018); "ticket cashier" (DOT 211.467-018); and "room service clerk" (DOT 324.577-010) and that there were a significant number of these jobs in Mississippi and nationally.

    At step five of the sequential evaluation process, the Commissioner must demonstrate that the claimant can perform relevant work. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). Vocational expert testimony based on a hypothetical question that reasonably incorporates the disabilities found by the ALJ constitutes substantial evidence and may be used to meet the Commissioner's burden at step five. *Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988). *See also Price v. Astrue*, No. 09-51145, 2010 WL 4683814, at *2 n. 9 (5th Cir. Nov. 18, 2010) (citing *Haggard v. Apfel*, 175 F.3d 591, 595 (8th Cir. 1999).

11

In this case, the ALJ relied upon the VE's testimony that there were a significant number of jobs in the national economy that the claimant could perform. The claimant's arguments that the VE testimony did not constitute substantial evidence are unavailing. First, the claimant's argument regarding her illiteracy is not persuasive. During the administrative hearing, the claimant testified that she could only read some parts of the newspaper and could write only "a little." However, the VE based his opinion about other jobs upon the ALJ's hypothetical which incorporated the fact that the claimant had a ninth grade education and had previously performed semiskilled work. The court finds the ALJ's hypothetical reasonably accounted for the claimant's limited education and/or literacy limitations. Moreover, the claimant's attorney was afforded a fair opportunity to raise this alleged additional limitation during his cross-examination of the VE but failed to do so.[12]

The claimant's argument with respect to her alleged reaching, handling , and shoulder limitations is likewise without merit. Here, the claimant rehashes her argument that the ALJ's RFC determination was erroneous. The court has already determined that the ALJ's RFC finding with respect to the claimant's lack of any handling and/or gripping limitations is supported by substantial evidence in the record. With respect to use of the shoulders, the court finds that the ALJ's finding that the claimant could never climb, do overhead work with her arms, or perform jobs requiring high torque or high impact tools adequately accounted for the limited range of motion in both shoulders as supported by the findings of Dr. Blaylock. As for her alleged reaching limitations, the claimant points to the state agency physician's finding of "limited" reaching as support for her argument. However, a careful review of the state agency physician's report clearly indicates a limitation in reaching only to the extent of "[n]o sustained overhead work" with the

---

[12]See *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir.1994), which states that the Fifth Circuit's test in this context is that there is no reversible error where a hypothetical question reasonably incorporates all of the limitations found by the ALJ, and claimant's representative was provided an opportunity to "correct any defect" about additional limitations.

bilateral extremities.  This limitation encompasses the claimant's shoulder problems and was specifically accounted for by the ALJ.  In this case, the VE considered all of the claimant's limitations found by the ALJ.  "A vocational expert is called to testify because of his familiarity with job requirements and working conditions." *See Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995) (citing *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986).  Moreover, "[t]he value of a vocational expert is that he [or she] is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." *Id.* (quoting *Fields*, 805 F.2d at 1170).  Ultimately, the court finds the Commissioner satisfied his burden at step five.

## IV. RECOMMENDATION

Based on the foregoing findings and conclusions, it is recommended that the Commissioner's decision be affirmed.

The parties are referred to L. U. Civ. R. 72(a)(3) for the applicable procedure in the event any party desires to file objections to the findings and recommendations herein contained.  The parties are warned that any such objections are required to be in writing and must be filed within fourteen days of this date.  Failure to timely file written objections to the proposed findings, conclusions and recommendations contained in this report will bar an aggrieved party, except upon grounds of plain error, from attacking on appeal unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Respectfully submitted this 14th day of July, 2011.

/s/ Jane M. Virden
UNITED STATES MAGISTRATE JUDGE